UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| FLORENCE MARATEA and ANTHONY MARATEA, <br><br>                           Plaintiffs, <br><br> v. <br><br> GENERAL GROWTH PROPERTIES and STATEN ISLAND MALL, <br><br>                           Defendants. | NOT FOR PUBLICATION <br><br> **ORDER** <br> 14-CV-04994 (MKB) |

---

GENERAL GROWTH PROPERTIES and STATEN ISLAND MALL,

                          Third-Party Plaintiffs,

v.

UNIVERSAL PROTECTION SERVICE, LLC,

                          Third-Party Defendant.

---

UNIVERSAL PROTECTION SERVICE, LLC,

                          Second Third-Party Plaintiff,

v.

ABCO MAINTENANCE, INC.,

                          Second Third-Party Defendant.

---

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Florence Maratea and Anthony Maratea commenced the above-captioned action on May 6, 2014, against Defendants General Growth Properties and Staten Island Mall (collectively "GGP") in New York state court, asserting negligence claims based on a slip-and-fall incident. Plaintiffs allege that Florence Maratea fell and sustained injuries in the parking lot of the Staten Island Mall, located in Staten Island, New York (the "Premises"), because of the

hazardous conditions maintained by GGP or its agents. On August 22, 2014, GGP, the owner of the Staten Island Mall, removed the action to this Court based on diversity jurisdiction. (Notice of Removal, Docket Entry No. 1.) On October 14, 2015, GGP filed a third-party complaint against Third-Party Defendant Universal Protection Service, LLC ("UPS"), the security services provider, seeking contribution and indemnification for any damages owed to Plaintiffs. (Third-Party Compl. ("GGP Compl."), Docket Entry No. 76.) GGP asserts claims for breaches of contract, detrimental reliance, common law indemnification, and contribution, pursuant to New York Civil Practice Law and Rules §§ 1401, 1402. (*Id.*) On April 5, 2016, UPS filed a second third-party complaint against Second Third-Party Defendant ABCO Maintenance, Inc. ("ABCO"), the general maintenance provider, asserting claims for common law contribution and indemnification for any damages owed to Plaintiffs. (Second Third-Party Compl., ("UPS Compl."), Docket Entry No. 194.)

On January 12, 2018, GGP,[1] UPS,[2] and ABCO,[3] all moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to resolve claims vis-à-vis the others. For the reasons set forth below, the Court cannot decide the parties' cross-motions for summary judgment at this time as it would require the adjudication of facts and legal issues overlapping with Plaintiffs' underlying claims.

**I. The moving parties' claims overlap with Plaintiffs' claims**

Under Illinois state law, it is well-established that courts may not determine facts or legal

---

[1] (GGP Mot. for Summ. J. ("GGP Mot."), Docket Entry No. 67; GGP Mem. in Supp. of GGP Mot. ("GGP Mem."), Docket Entry No. 68-21.)

[2] (UPS Mot. for Summ. J. ("UPS Mot."), Docket Entry No. 57; UPS Mem. in Supp. of UPS Mot. ("UPS Mem."), Docket Entry No. 60.)

[3] (ACBO Mot. for Summ. J. ("ABCO Mot."), Docket Entry No. 61; ABCO Mem. in Supp. of ABCO Mot. ("ABCO Mem."), Docket Entry No. 61-16.)

issues in duty to defend or indemnify cases that implicate the merits of the underlying action.[4] *See Am. Alternative Ins. Co. v. Lisle-Woodridge Fire Prot. Dist.*, 2014 WL 2601675, at *5 (Ill. App. Ct. 2d Dist. June 9, 2014) ("[I]t is inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation." (citation omitted)); *State Farm Fire & Cas. Co. v. Shelton*, 176 Ill. App. 3d 858, 863 (App. Ct. 1988) (stating that, under Illinois law, the declaratory judgment court "must not determine disputed factual issues that are crucial to the insured's liability in the underlying personal injury lawsuit"); *see also Lexington Ins. Co. v. Bd. of Educ. of Lake Forest Cmty. High Sch. Dist. 115*, No. 11-CV-556, 2012 WL 74778, at *1 (N.D. Ill. Jan. 10, 2012) ("Under this so-called 'prematurity doctrine,' declaratory judgment should not be used to force the parties to an injury action 'to have a dress rehearsal of an important issue expected to be tried in the injury action.'" (citation omitted)).

Although the above principle is traditionally invoked where the underlying personal injury action and the insurance or indemnification action are in separate courts or proceedings, the Court finds the rationale for the rule equally applicable in this case. Plaintiffs have not moved for summary judgment and have not had an opportunity to state their views as to the facts and legal conclusions asserted by GGP, UPS, and ABCO. Therefore, the Court cannot determine whether Plaintiffs dispute any of the facts asserted by the moving parties, including those that are

---

[4] GGP and UPS agree that Illinois law governs the interpretation of the Security Agreement that governs their relationship because of the choice-of-law provision in the Security Agreement. (GGP Mem. 5; UPS Mem. 14.) New York choice-of-law rules, which New York federal courts sitting in diversity must apply, also generally presume that choice-of-law clauses are enforceable "because 'contracts should be interpreted so as to effectuate the parties' intent.'" *See AEI Life LLC v. Lincoln Benefit Life Co.*, --- F.3d ---, ---, 2018 WL 2746589, at *4 (2d Cir. June 8, 2018); *see also Dukes Bridge LLC v. Sec. Life of Denver Ins. Co.*, No. 10-CV-5491, 2015 WL 3755945, at *4 (E.D.N.Y. June 16, 2015) (explaining choice-of-law clauses are entitled to a "presumption of enforceability" under New York law (citing *Aguas Lenders Grp. v. Suez, S.A.*, 585 F.3d 696, 800 (2d Cir. 2009)).

3

likely crucial to Plaintiffs' claims.[5] In addition, the determination of the rights and claims as between GGP, UPS, and ABCO, implicate Plaintiffs' underlying claims.

GGP's and UPS' claims against each other expressly implicate Plaintiffs' claims against GGP.[6] For example, Subsection f. of the Insurance and Indemnification section of the Security Agreement between the GGP and UPS states that "[w]hen a slip, trip or fall claim arises, [GGP] shall tender such claims to the janitorial vendor unless [UPS] is implicated in such claim as a result of its negligence or misconduct."[7] (Security Agreement 19, annexed to Michael D. Newsome Decl. in Supp. of GGP Mot. as Ex. N, Docket Entry No. 68-14.) The parties do not dispute that UPS provides security rather than janitorial services to GGP, and that Plaintiffs' claims are based on a slip and fall. Based on the Security Agreement, it appears that GGP therefore cannot tender any claims for indemnification to UPS unless UPS was negligent or engaged in misconduct. However, a determination as to UPS' negligence or misconduct implicates Plaintiffs' underlying claims as Plaintiffs allege that GGP or its agents were negligent in the maintenance of the Premises. (*See* Pls. Compl. ¶ 44, annexed as Ex. A to Notice of Removal, Docket Entry No. 1.) If the Court finds UPS negligent, Plaintiffs may benefit from and rely on such a determination. Conversely, if the Court finds that UPS was not negligent or

---

[5] Moreover, even if Plaintiffs move for summary judgment, the Court would be unable to decide the issues currently before the Court because there would remain genuine disputes of material facts that would preclude summary judgment.

[6] A few of ABCO's arguments for summary judgment also rely on the adjudication of the claims between GGP and UPS. (*See* ABCO Mem. 2.)

[7] Because the Security Agreement between UPS and GGP is not an insurance agreement but instead "a private indemnity agreement between noninsurers," UPS can look beyond Plaintiffs' complaint and the Security Agreement to determine its contractual obligations. *See Calvert v. Office Depot, Inc.*, No. 14-CV-6145, 2017 WL 782994, at *5 (N.D. Ill. Feb. 28, 2017). Based on the language of the Security Agreement, UPS would be entitled to look to extrinsic evidence to determine whether it was negligent or committed misconduct.

4

did not engage in any misconduct, Plaintiffs' claims against GGP may be negatively impacted — if GGP's agents, whether UPS or ABCO, did not act negligently, it would likely be more difficult to find GGP itself to have been negligent in either maintaining the Premises[8] or overseeing those entrusted with maintenance. As this example illustrates, the Court cannot decide the pending motions for summary judgment without resolving factual or legal issues crucial to Plaintiffs' underlying claims.

## II. Conclusion

For the reasons discussed above, the Court cannot decide the pending cross-motions for summary judgment by GGP, UPS, and ABCO. Accordingly, the Court stays the motions and marks them off the motion calendar pending a decision on the merits of Plaintiffs' underlying claims.

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: July 10, 2018
      Brooklyn, New York

---

[8] UPS also argues that GGP had notice of the defect at issue and failed to correct the problem, thereby implicating Plaintiffs' underlying claims against GGP. (UPS Mem. 15.) Because "indemnity agreements are not favored in Illinois, they must be strictly construed against the indemnitee." *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744 (7th Cir. 1996). As a result, Illinois law only "permits agreements to be construed as indemnifying a [party] against [its] own negligence (and perhaps intentional misconduct) when supported by clear and explicit language." *Brennan v. Connors*, 644 F.3d 559, 562 (7th Cir. 2011).